UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MADISON R. BAILEY,                              )
                                                )
               Plaintiff,                       )
                                                )
v.                                              )        No. 1:20-cv-105-DCP
                                                )
KILOLO KIJAKAZI[1],                             )
Acting Commissioner of Social Security,         )
                                                )
               Defendant.                       )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 14]. Now before the Court are

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21].

Madison R. Bailey ("Plaintiff") seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the

reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

## I.     PROCEDURAL HISTORY

On June 5, 2017, Plaintiff filed an application for supplemental security income pursuant

to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging disability beginning on

August 5, 2009. [Tr. 15, 162, 177]. After his application was denied initially and upon

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 92–94]. A hearing was held on December 18, 2018. [Tr. 28–57]. On April 9, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 12–27]. The Appeals Council denied Plaintiff's request for review on February 22, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 22, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 5, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: anxiety disorder, depressive disorder, and obsessive-compulsive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant would be limited to the performance of simple, non-complex tasks. He should not work with the public and have no more than occasional interaction with coworkers or supervisors. The claimant would be better working with things than with people and would require a stable work environment.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 4, 1994 and was 22 years old, which is defined as a younger individual age 18-49, on the date the

2

application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 5, 2017, the date the application was filed (20 CFR 416.920(g)).

[Tr. 17–23].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

3

case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be

4

considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

5

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of his treating psychologist Karen L. Weigle, Ph.D. The Court will first review the respective medical opinions and will then analyze the ALJ's RFC determination and treatment of these opinions.

### A.    Medical Opinions

Plaintiff states that he applied for Title XVI Supplemental Security Income due to his severe obsessive-compulsive disorder ("OCD") and anxiety. [Doc. 19 at 1]. Plaintiff details that he was seen by Dr. Weigle at the Chattanooga Autism Center for a clinical assessment regarding potential Autism Spectrum Disorder ("ASD") on October 4 and 26, 2017. [Tr. 258]. Plaintiff's father completed the Problem Behavior Inventory based on his observations of and with some input from Plaintiff. Plaintiff's father also completed the Behavior Assessment for Children, Third Edition and Gilliam Autism Rating Scale, Third Edition ("GARS"), and Plaintiff was observed under the Autism Diagnostic Observation Schedule—2 ("ADOS-2"). [Tr. 260]. Dr. Weigle stated that Plaintiff's score on the ADOS-2 and GARS indicated the presence of ASD, but that "the neurodevelopmental course, quality of his interpersonal presentation, and underlying reasons for his symptoms remain unclear," as Plaintiff's childhood history could support either a diagnosis of

6

ASD or precursors to a personality disorder. [Tr. 261]. Dr. Weigle found that Plaintiff's presentation "most closely matches that of a young man with long-term depression, anxiety, and schizoid personality disorder." [*Id.*]. Additionally, Dr. Weigle noted the timing of Plaintiff's symptoms with a tick bite/Rocky Mountain spotted fever and head injury. [*Id.*]. Therefore, Dr. Weigle's diagnostic impression included persistent depressive disorder, with anxious distress, early onset, severe; unspecified anxiety disorder; personality change due to neurological disorder or brain injury, labile type; and schizoid personality disorder. [*Id.*].

Plaintiff continued to be seen by Dr. Weigle on November 8, 2017 [Tr. 277], February 14, 2018 [Tr. 287], March 29, 2018 [Tr. 285], April 18, 2018 [Tr. 284], June 6, 2018 [Tr. 283], July 11, 2018 [Tr. 281], July 26, 2018 [Tr. 280], and August 9, 2018 [Tr. 298]. Plaintiff cites to a letter from Dr. Weigle on November 29, 2017 [Tr. 263]. In this letter, Dr. Weigle stated that she recently conducted a psychological evaluation with Plaintiff, and with regard to functional impairments, Plaintiff "is able to ensure he eats once a day and maintain[s] very minimal hygiene," as well as that Plaintiff is not able to initiate productive activities or complete daily routines without repeated prompts. [*Id.*]. Dr. Weigle assessed that Plaintiff is unable to adapt to new surroundings, people, or expectations without great disturbances and Plaintiff displays periods of what appear to be catatonia and complete inertia. [*Id.*]. Therefore, Dr. Weigle found that given Plaintiff's current impairments and their neurodevelopmental nature, Plaintiff is likely unable to gain these skills and care for himself over his lifespan. [*Id.*].

Dr. Weigle completed a Medical Source Statement on November 14, 2018. [Tr. 273]. In the opinion, Dr. Weigle stated that she treated Plaintiff for psychological evaluation and psychotherapy. [*Id.*]. First, Dr. Weigle assessed that Plaintiff could not work one full eight-hour day due to cognitive difficulties with planning and executing tasks. [*Id.*]. Dr. Weigle listed

7

Plaintiff's current diagnoses as dysthymic disorder; R10 personality change due to neurological disorder or brain injury, labile type; and OCD. [*Id.*]. Additionally, Dr. Weigle assessed that if placed into a full-time employment setting, Plaintiff's depression and catatonic states, as well as symptoms of OCD, would worsen under stress and expectations to perform tasks. [*Id.*]. In this regard, Dr. Weigle assessed that Plaintiff would be off task 70% or more in an average workday due to his condition. [*Id.*].

Next, with respect to understanding and memory limitations Dr. Weigle opined that Plaintiff was moderately limited in the ability to remember locations and work-like procedures and understand and remember very short simple instructions, but that he was markedly limited in the ability to understand and remember detailed instructions. [Tr. 273–74]. When assessing Plaintiff's sustained concentration and persistence, Dr. Weigle found that Plaintiff was mildly limited in the ability to work in coordination with or in proximity to others without being distracted by them; moderately limited in the ability to carry out very short and simple instructions and make simple work-related decisions; markedly limited in the ability to maintain attention and concentration for extended periods; and extremely limited in the ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms. [Tr. 274].

When assessing Plaintiff's social interaction abilities, Dr. Weigle opined that Plaintiff was not limited in the ability to accept instructions and respond appropriately to criticism from supervisors; mildly limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; markedly limited in the ability to interact appropriately with the general public and maintain socially appropriate behavior and adhere to basic standards

8

of neatness and cleanliness; and extremely limited in the ability to ask simple questions or request assistance. [*Id.*]. Lastly, when reviewing Plaintiff's adaption, Dr. Weigle found that Plaintiff was mildly limited in the ability to be aware of normal hazards and take appropriate precautions; as well as that he was extremely limited in the ability to respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, or tolerate normal levels of stress. [Tr. 274–75].

In the disability decision, the ALJ reviewed Dr. Weigle's November 29, 2017 letter and November 14, 2018 medical source statement. [Tr. 21]. However, the ALJ found "these opinions to be unpersuasive, as they appear based more on the claimant's allegations than on objective evidence," and "[t]here is no evidence that supports such extreme or marked limitations in functioning other than the claimant's subjective complaints." [*Id.*].

Plaintiff also had an initial intake evaluation with Katheryn Eller, LPC, MHSP, at the Center for a Brighter Tomorrow on March 28, 2017. [Tr. 245]. Plaintiff continued to be seen by LPC Eller for therapy sessions on May 8, 2017 [Tr. 247] and June 6, 2017 [Tr. 252]. On June 29, 2017, LPC Eller issued an opinion stating that Plaintiff had been in her care since March 28, 2017 seeking treatment for anxiety disorder, and that it was her professional opinion that Plaintiff would not be able to sustain current employment. [Tr. 242]. LPC Eller noted that Plaintiff "reports and demonstrates behaviors consistent with high levels of anxiety and obsessive-compulsive tendencies," while also reporting ongoing feelings of paranoia. [*Id.*]. Further, LPC Eller detailed that Plaintiff has a severe aversion to social interaction, including with his own family, as Plaintiff reported that he only talks to his family members at meal times or when he needs something, as well as that he had only left the house once in the past three weeks. [*Id.*]. LPC Eller concluded that Plaintiff "demonstrates behaviors that lead [her] to conclude that he has difficulty processing

9

and communicating information," as Plaintiff "demonstrates a very low stress tolerance" and "does not adapt to changes in his environment and/or expectations quickly." [*Id.*].

In the disability decision, the ALJ found that LPC Eller's opinion was based more on Plaintiff's subjective complaints and not on objective evidence, and found the opinion to be unpersuasive, agreeing that Plaintiff had difficulty interacting with others, but to no more than a moderate level. [Tr. 21].

The ALJ also afforded great weight to the opinion of consulting psychological examiner, Charles Rudolph, Ph.D., who examined Plaintiff on August 16, 2017. *See* [Tr. 254]. Dr. Rudolph noted that Plaintiff appeared able to understand the questions and was able to engage in conversation with no difficulties—although there was difficulty understanding what he was saying—as well as that Plaintiff was polite and friendly while making good eye contact and appeared to have a good attitude toward the interview. [*Id.*]. Mental status testing revealed some evidence of confusion or disorientation, although Plaintiff's overall insight and judgment appeared fair. [Tr. 255]. Dr. Rudolph assessed that Plaintiff's responses suggested low average reasoning abilities, that Plaintiff's abstract reasoning was average, that Plaintiff appeared to have a fair long-term memory of his life history and events, and Plaintiff's overall language skills appeared to be average. [*Id.*]. Dr. Rudolph noted that Plaintiff's affect was flat, his mood was depressed, and he appeared to have average emotional energy and did not laugh and smile during the interview. [Tr. 256]. Therefore, Dr. Rudolph diagnosed Plaintiff with depression and anxiety. [*Id.*].

Ultimately, Dr. Rudolph opined that Plaintiff was moderately limited in the ability to understand and remember, sustain concentration and persistence, social interaction, and the ability to adapt and tolerate stress associated with daily activities. [*Id.*]. The ALJ found "Dr. Rudolph's opinion well supported by the record," and thus "very persuasive," as the "opinion is well

10

supported by medically acceptable clinical diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record." [Tr. 21].

Lastly, the ALJ found the opinions of the nonexamining state agency psychological consultants were very persuasive, as "[t]hese opinions are well supported by medically acceptable clinical findings and are consistent with the other substantial evidence in the claimant's case record." [*Id.*]. State agency consultants Robert Paul, Ph.D., and Maryann Wharry, Psy.D., reviewed the medical record at the initial and reconsideration levels of the agency's review on August 31, 2017 and November 29, 2017. [Tr. 60–68, 73–81]. Dr. Paul and Dr. Wharry found that Plaintiff had severe mental impairments of anxiety and OCD, as well as depressive, bipolar and related disorders. [Tr. 62, 75]. When assessing Plaintiff's sustained concentration and persistence limitations, they found that Plaintiff was not significantly limited in the ability to carry out very short and simple, or detailed, instructions, or the ability to make simple work-related decisions; but that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms. [Tr. 66–67, 80].

When reviewing Plaintiff's social interaction limitations, Dr. Paul and Dr. Wharry found that Plaintiff was not significantly limited in the ability to ask simple questions or request assistance or in the ability to maintain socially appropriate behavior and to adhere to basic standards and neatness and cleanliness. [Tr. 67, 80–81]. However, Dr. Paul and Dr. Wharry found that Plaintiff was moderately limited in his ability to interact appropriately with the general public,

11

accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavior extremes. [*Id.*]. Lastly, Dr. Paul and Dr. Wharry assessed that Plaintiff was not significantly limited in the ability to be aware of normal hazards and take appropriate precautions; moderately limited in his ability to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others; and that Plaintiff's ability to travel in unfamiliar places or use public transportation was not ratable on available evidence. [*Id.*].

Therefore, the nonexamining state agency psychological consultants found that Plaintiff could understand and remember simple and detailed tasks and instructions; as well as that he could, with some but not substantial difficulty, sustain adequate persistence and pace for the above tasks across a normal work day and work week given customary breaks. [Tr. 67–68, 81]. Additionally, Dr. Paul and Dr. Wharry found that Plaintiff could interact and get along adequately with the general public, coworkers, and supervisors for the purposes of task completion; however, he appeared better suited for things versus people-oriented type of work, as well as that interactions with others in the workplace should be brief, superficial, and task focused; and concluded that Plaintiff would do best at jobs that did not require him to have direct contact with the general public on any more than an occasional basis. [*Id.*]. Lastly, the nonexamining state agency consultants found that Plaintiff could adapt and respond to infrequent changes in a routine work setting given reasonable support and structure, as well as that he could make and set work-related plans and goals independently but not at executive levels. [*Id.*].

### B.     Standard

Since Plaintiff's claim was filed after March 27, 2017, the SSA's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the*

12

*Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;

> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this

13

section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at \*11 (E.D. Tenn. Mar. 11, 2021).

Additionally, the Revised Regulations explain, "[a] prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in [a claimant's] current claim based on their review of the evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1513(a)(5).

When two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ is required to "articulate how [he/she] considered the other most persuasive factors" of relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(b)(3).

C.    **Analysis**

Plaintiff contends that "the ALJ's mental RFC determination is not supported by

14

substantial evidence because he failed to properly weigh the opinion" of Plaintiff's treating psychologist—Dr. Weigle. [Doc. 19 at 9]. As detailed above, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all levels, with the following nonexertional limitations: Plaintiff would be limited to the performance of simple, non-complex tasks; he should not work with the public and have no more than occasional interaction with coworkers or supervisors; and would be better working with things than with people and would require a stable work environment. [Tr. 19].

In particular, Plaintiff challenges the ALJ's reasoning for finding Dr. Weigle's opinions unpersuasive—that they appear to be based more on Plaintiff's subjective allegations than objective evidence. The ALJ also found that there was no evidence that supports such extreme or marked limitations in functioning other than Plaintiff's subjective complaints. However, Plaintiff claims the ALJ ignored treatment notes where Dr. Weigle "consistently observed Plaintiff's cognitive difficulties" throughout her treating relationship, as well as several "objective assessments" of Plaintiff that Dr. Weigle conducted which support her opinions. [Doc. 19 at 12]. Plaintiff asserts that the "ALJ failed to adequately explain why Dr. Weigle's opinions are unsupported by her treatment history, observations, or objective findings." [*Id.* at 13]. Plaintiff further maintains that Dr. Weigle's opinions are supported by the June 29, 2017 opinion of Plaintiff's counselor, LPC Eller.

Conversely, Plaintiff challenges the ALJ's assignment of great weight to consultative examiner Dr. Rudolph's opinion. Plaintiff asserts that although the ALJ found that Dr. Rudolph's opinion was supported by medically acceptable clinical diagnostic techniques and consistent with substantial evidence in the medical record, "the ALJ fails to articulate exactly what portions of the record support such a conclusion." [*Id.* at 14].

15

The Commissioner responds [Doc. 21] that the ALJ properly found Dr. Weigle's opinions to be unpersuasive. As such, the Commissioner claims that the ALJ properly considered whether Dr. Weigle's opinions were consistent with or supported by the medical record. Further, the Commissioner notes that the ALJ also found Dr. Rudolph's opinion and the findings of the nonexamining state agency psychological consultants very persuasive.

As stated above, the treating physician rule is not applicable in Plaintiff's case, as the ALJ was instead tasked with considering how persuasive the medical opinions of record were. Under the SSA's revised regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Here, due to the lack of extensive case law or Sixth Circuit guidance on the updated regulations, the Court largely focuses on the regulatory language. In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and requires the ALJ to address these two factors in evaluating medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2).

16

"Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021). However, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Here, the Court finds that the ALJ appropriately considered the supportability and consistency factors of 20 C.F.R. § 404.1520c(c)(2) in reviewing the medical opinions of record. The ALJ specifically detailed that he found that Dr. Weigle's opinions finding marked and extreme limitations were unpersuasive, as they were based more on Plaintiff's allegations than objective evidence. [Tr. 21]. When addressing the consistency factor, the ALJ found that "[t]here is no evidence that supports such extreme or marked limitations in functioning other than the claimant's subjective complaints." [*Id.*].

As noted by the Commissioner, earlier in the RFC determination, the ALJ briefly summarized Plaintiff's treatment records with Dr. Weigle in 2017 and 2018. [Tr. 20]. Therefore, the Commissioner argues that "neither Plaintiff's October 2017 assessment . . . nor Plaintiff's subsequent treatment records support the marked, extreme, and disabling limitations set forth by Dr. Weigle . . . or contain observations of behavior or limitations consistent with Dr. Weigle's opinions." [Doc. 21 at 10]. Rather, the Commissioner claims that "Dr. Weigle's brief treatment records routinely indicated that Plaintiff had an appropriate appearance, fair or good hygiene, logical and coherent thoughts, a content mood, no suicidality/homicidality, and fair or good progress towards discharge." [*Id.*]. In contrast, Plaintiff cites to numerous treatment records with Dr. Weigle indicating cognitive difficulties with memory and language [Tr. 292, 294], as well as

17

objective assessments—such as Dr. Weigle concluding that based on the GARS test, Plaintiff had a high likelihood of having ASD with areas of concern being restricted/repetitive behavior, social interactions, and maladaptive speech [Tr. 260]. *See* [Doc. 19 at 12]. Additionally, Plaintiff points to the results of the ADOS-2 test, where Dr. Weigle determined that the results indicated extensive impairment in social affect and restricted and repetitive behavior. [*Id.*].

However, the Court finds that there is substantial evidence to support the ALJ's determination that Dr. Weigle's opinions of marked and extreme limitations were not consistent with the medical record, and not supported, as they were based on Plaintiff's subjective complaints. The ALJ appropriately reviewed the medical record of Plaintiff's mental health treatment, and after this review, found that "[t]here is no evidence that supports such extreme or marked limitations in functioning other than [Plaintiff's] subjective complaints." [Tr. 21]. Through this conclusion, the ALJ identified specific evidence that was inconsistent with Dr. Weigle's assessed disabling limitations. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). Moreover, the ALJ considered other opinion evidence in rendering his decision, including the opinion of state agency consultant Dr. Wharry, who reviewed and considered Dr. Weigle's opinion, explaining that the assessment by Dr. Weigle "does not conclude ASD and questions basis of [symptoms]. Notably, [Plaintiff] presents differently during this assessment compared to CE and OP evidence. Evidence depicts [Plaintiff] as generally no more than moderately limited by mental factors alone." *See* [Tr. 77].

The parties have cited to competing treatment records with Dr. Weigle, and the Court finds

18

that the ALJ did not mischaracterize the medical record with respect to Plaintiff's mental impairments. Although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), they are not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

However, the Court cautions against an ALJ merely reviewing the entire medical record and summarily stating that an opinion or administrative finding was inconsistent with the medical record, without citing to specific examples that conflict with the opinion. *See, e.g.*, *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021) ("The ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Sprout's opinion was substantially inconsistent with the medical record."), *report and recommendation adopted by*, 2021 WL 2530846 (N.D. Ohio June 21, 2021); *Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *7 (S.D. Ohio Mar. 29, 2021) ("In the absence of any explanation of the supportability and consistency factors, as the regulations

19

require, the Court is unable to conclude that the ALJ's consideration of Dr. Ghoorkhanian's opinion is supported by substantial evidence.").

Ultimately, the Court finds that the ALJ appropriately considered Dr. Weigle's opinions, as the Court is able to logically follow his discussion of the medical record and opinions to his evaluation of Dr. Weigle's opinions and his conclusions in the RFC analysis. *Cf. White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Here, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusions in his RFC analysis and in his evaluation of the opinions of Drs. Hochman and Vargo."). The ALJ considered the supportability of the opinions and found that they were largely based on Plaintiff's subjective allegations. As detailed above, the ALJ found that the medical record did not support the marked and extreme limitations set forth in Dr. Weigle's opinions. The ALJ found that similar disabling limitations set forth in LPC Eller's opinion were not supported by the medical record.

Additionally, this finding is bolstered by the ALJ's conclusion that the moderate limitations set forth in the opinions of the nonexamining state agency consultants and the examining consultant, Dr. Rudolph, were more consistent with the medical record, and thus, persuasive. *See, e.g.*, *Brock v. Saul*, No. CV 19-278-DLB, 2021 WL 297570, at *4 (E.D. Ky. Jan. 28, 2021) ("The ALJ's decision to rely on the State psychological consultants in evaluating Plaintiff's mental impairment was proper because the ALJ properly found Dr. Rigby's evaluation to be inconsistent with its ultimate conclusion."). Plaintiff claims that the ALJ failed "to articulate exactly what portions of the record" support the conclusion that Dr. Rudolph's opinion was supported by medically acceptable clinical diagnostic techniques and consistent with the substantial evidence in the medical record. [Doc. 19 at 14]. Plaintiff asserts that "[a]n ALJ's statement favoring or rejecting an opinion by simply citing consistency with the totality of the record is too vague to

20

permit review," citing to *Fritz v. Colvin*, No. 2:14-cv-1911, 2016 WL 491829, at *3 (S.D. Ohio Feb. 9, 2016).  [*Id.*].  However, in *Fritz*, the Southern District of Ohio addressed the ALJ's treatment of the opinion of a treating psychologist under the previous regulations, finding that the ALJ's statement that the treating psychologist's opinion "was not consistent with the 'totality of the medical evidence of record' was too vague to permit review."  2016 WL 491829 at *3.  Conversely, in the present case, under the revised regulations, the ALJ's discussion of the medical record throughout the opinion, including finding Dr. Paul and Dr. Wharry's opinions persuasive, provides the explanation for his conclusion that Dr. Rudolph's opinion was supported by the medical record.

The revised regulations have not altered the fact that the ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record.  *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).  Here, after reviewing the medical record with respect to Plaintiff's mental impairments, the ALJ found that Dr. Ruldoph's opinion, as well as the findings of the nonexamining state agency consultants, were more persuasive, and thus declined to adopt the opinion of Plaintiff's treating psychologist, Dr. Weigle.  As such, the Court finds that Plaintiff's allegations of error with respect to Dr. Weigle's opinions do not constitute a basis for remand.

21

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 18**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge